# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**FREDERICK LEE PHARM,**
        Petitioner,

    v.                                                Case No. 07C0414

**STEVE WATERS, Director,**
**Sand Ridge Secure Treatment Center,**
        Respondent.

## DECISION AND ORDER

Petitioner Frederick Lee Pharm, who is presently committed to a secure mental health facility as a sexually violent person pursuant to Chapter 980 of the Wisconsin Statutes, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argues that he is in custody in violation of the Interstate Agreement on Detainers ("IAD").

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Wisconsin Supreme Court described the background of the case as follows:

In 1975, Pharm committed sexual acts that led to criminal charges in Milwaukee County. Pharm left Wisconsin prior to his arrest on those charges. In 1977, Pharm was convicted of murder in Nevada and sentenced to life in prison. In October 1987, the Nevada Department of Prisons informed Pharm that Wisconsin had filed a detainer against him based on pending charges in Milwaukee County.

    In response, Pharm executed a "Request for Disposition of Indictments, Informations or Complaints," pursuant to IAD [Interstate Agreement on Detainers] Article III, Wis. Stat. § 976.05(3). Pharm's Request for Disposition asked for "final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged." As part of his Article III request, he agreed that in asking for prompt final disposition,

        I also agree that this request shall be deemed to be my waiver
        of extradition with respect to any charge or proceeding

> contemplated hereby or included herein, and a waiver of extradition to your state to serve any sentence there imposed upon me, after completion of my term of imprisonment in this state.

Pharm further consented to be produced in any court necessary to effectuate the purposes of the IAD and to be voluntarily returned to Nevada to complete his term of incarceration there.

Based on Pharm's Request for Disposition, Nevada submitted an "Offer to Deliver Temporary Custody" to Wisconsin, "in order that speedy and efficient prosecution may be had of the indictment, information or complaint . . . . " Wisconsin then sent a document entitled "Prosecutor's Acceptance of Temporary Custody Offered in Connection with an Inmate's Request for Disposition of a Detainer." It was signed by the Milwaukee County Assistant District Attorney and stated, "I propose to bring this person to trial on the complaint named in the offer within the time specified in Article III(a) of the Agreement on Detainers." Wisconsin also agreed to return Pharm to Nevada, or any jurisdiction Nevada designated to take temporary custody, immediately after a trial on the Wisconsin charges was completed. Thereafter, Pharm was transported to Wisconsin to face criminal charges.

A jury found Pharm guilty of both indecent behavior with a child and sexual perversion. The circuit court imposed consecutive indeterminate sentences, not to exceed a total of fifteen years, and ordered the sentences to be served consecutively to Pharm's life sentence in Nevada. Pharm was then returned to Nevada to continue incarceration there.

In October 1990, Pharm was paroled by Nevada. The Parole Agreement stated as a condition, "Parole to Wisconsin Detainer." Nevada authorities sent a letter to Wisconsin authorities regarding the terms of Pharm's custody, which stated:

> The above named subject has been paroled to your "HOLD" and will remain under Nevada's parole supervision until Life.
>
> To assist us in fulfilling our responsibility in this matter we request that you notify us immediately should the subject escape from your custody, or of the final disposition of any pending charges.
>
> Please accept this letter as a request for sixty (60) days notification prior to the subject's release or transfer within your system.

> In contrast to what occurred before Pharm's Wisconsin trial on outstanding charges, Nevada executed no Offer to Deliver Temporary Custody prior to Pharm's return to Wisconsin to begin his term of incarceration. Wisconsin then took custody of Pharm and brought him to Wisconsin for confinement in a Wisconsin prison.
>
> Pharm's mandatory release date from a Wisconsin prison was scheduled for October 28, 1997. Prior to his release, Nevada wrote Pharm advising him to contact the Nevada Division of Parole and Probation upon his release. However, on the date of his scheduled release, Wisconsin initiated a ch. 980 proceeding to commit Pharm as a sexually violent person. Following a jury trial, Pharm was found to be a sexually violent person, and the Milwaukee County Circuit Court committed him to a secure mental health facility. Pharm's commitment was upheld on direct appeal. Pharm's commitment was upheld on direct appeal. <u>State v. Pharm</u>, 2000 WI App 167, 238 Wis. 2d 97, 617 N.W.2d 163.
>
> . . . .
>
> There is no letter in the record indicating whether Wisconsin notified Nevada 60 days prior to the conclusion of Pharm's sentence, as Nevada requested. However, based on Nevada's correspondence to Pharm … it appears that Nevada was notified of Pharm's pending release.

<u>State ex rel. Pharm v. Bartow</u>, 298 Wis.2d 702, 709-12 (2007).

After exhausting his direct appeals, petitioner sought collateral relief in the state courts. He argued that Wisconsin violated the IAD by committing him instead of returning him to Nevada to serve his parole. The circuit court denied relief, and the state court of appeals affirmed. The state supreme court granted review and also affirmed.

## II. DISCUSSION

I may entertain an application for habeas relief by a petitioner who is in custody pursuant to a state court judgment only if such custody is "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The IAD "is a congressionally sanctioned interstate compact" under the Compact Clause of the Constitution. U.S. Const. art. I, § 10, cl. 3; <u>Cuyler v. Adams</u>, 449 U.S. 433, 442 (1981). Thus, the IAD appears to be

3

a law of the United States, and petitioner's claim is that his custody violates a statute rather than the Constitution. However, such a claim "can be raised on collateral review only if the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Farley, 512 U.S. 339, 354 (1994) (internal quotations omitted).

It is unlikely that Wisconsin's decision to attempt to commit petitioner as a sex offender rather than return him to Nevada meets this demanding standard. Even admitted and flagrant violations of the IAD may not amount to a fundamental defect justifying habeas review.[1] See, e.g., McCandless v. Vaughn, 172 F.3d 255, 263-64 (3d Cir. 1999) (finding that the receiving state Pennsylvania's trial of the petitioner on murder charges that were never the basis of a detainer–a blatant violation of the IAD–and that resulted in a life sentence did not amount to a fundamental defect warranting habeas relief where the Pennsylvania trial court had personal and subject matter jurisdiction); Cooney v. Fulcomer, 886 F.2d 41, 44-45 (3d Cir. 1989) (holding that the inability of the petitioner to contest extradition on charges that were never the basis of a detainer, while a violation of the IAD, did not constitute a fundamental defect). And as the Seventh Circuit discussed, the individual prisoner interest protected by the IAD is the right to a speedy trial of outstanding

---

[1] In this case, the IAD may not even apply, since, at the time Wisconsin initiated Ch. 980 proceedings, petitioner was in custody in Wisconsin for purposes of serving the sentence imposed by the Wisconsin courts, after the disposition of the outstanding criminal charges and the completion of his term of incarceration in Nevada. See U.S. v. Roy, 830 F.2d 628, 633 (7th Cir. 1987); U.S. v. Black, 609 F.2d 1330, 1333 (9th Cir. 1979) ("When the prisoner was released on parole from the [sending] state prison and was transferred to [receiving jurisdiction] custody, he was no longer in the class of prisoners covered by the IAD."). However, I will assume it applies for purposes of this decision.

4

charges and untried indictments. Pitsonbarger v. Gramley, 103 F.3d 1293, 1301-02 (7th Cir. 1996), vacated on other grounds, 522 U.S. 802 (1997). The Seventh Circuit has rejected the assertion that the IAD also protects "an alleged interest in where [the prisoner] will serve his sentence." Id. at 1302 ("Here, the party with an interest in Pitsonbarger's return to Nevada to serve out the remainder of his sentence there was the State of Nevada itself."). Similarly, other courts have found that a failure by the receiving state to return the prisoner to the sending state as required by the IAD does not implicate a "fundamental defect," but rather is a matter solely between the two states that is not cognizable in federal habeas corpus review. See Remeta v. Singletary, 85 F.3d 513, 519 (11th Cir. 1996) ("Even if we were to assume that Florida has failed to honor its statutory commitment to Kansas under the IAD, however, this appears to be a matter exclusively between Florida and Kansas."). Thus, Wisconsin's commitment of petitioner in lieu of returning him to parole in Nevada does not constitute a fundamental defect, and therefore is not cognizable in an application for federal habeas review.

Even if it were cognizable, however, and I could therefore entertain petitioner's application, I may not grant the application with respect to a claim that was adjudicated on the merits in state court unless the decision "was contrary to or an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). In the present case, petitioner relies on § 2254(d)(1). However, petitioner points to no Supreme Court case that holds or even suggests that the IAD requires a receiving state to return a prisoner to a sending state to serve out a sentence of parole after the prisoner serves the confinement portion of the sentence in the

5

receiving state.  In the absence of Supreme Court precedent, I am without power to grant petitioner relief.

**Therefore,**

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DISMISSED.**

Dated at Milwaukee, Wisconsin this 5 day of November, 2008.

/s
LYNN ADELMAN
District Judge